Argued March 6, affirmed June 17, petition for rehearing denied
September 9, 1964

# MURPHY *v.* HARTY

393 P. 2d 206

*Robert L. Olson,* Portland, argued the cause and filed briefs for appellant.

*Frederic D. Canning,* Portland, argued the cause for respondent. With him on the brief were Hershiser, McMenamin, Blyth & Jones.

Before McALLISTER, Chief Justice, and PERRY, O'CONNELL, DENECKE and LUSK, Justices.

LUSK, J.

This is a libel action in which the plaintiff had a verdict and judgment for $10,000 compensatory damages. Defendant appeals.

Plaintiff is a former minister of the Baptist Church. Defendant, during the period involved, was clerk and later pastor of Hillcrest Missionary Baptist Church in Portland, Oregon. The alleged defamatory statements are contained in two letters written and published by the defendant, one, under date of October 23, 1961, to Elder Charles Potter, Pastor of Gospel Baptist Church, Kansas City, Kansas, the other, under date of August 30, 1961, to John P.

Saunders, Pastor of Unity Baptist Church in Pine Bluff, Arkansas. Both letters have to do with claimed improper conduct of the plaintiff as a missionary in Japan, whither he had been sent after having been endorsed for missionary work by the Hillcrest Church in February, 1959. In consequence of reports received by the defendant concerning such conduct the Hillcrest Church on March 22, 1961, voted to withdraw its endorsement of the plaintiff as foreign missionary of Japan and to remove his ordination.

The letter of August 30, 1961, was in reply to one from Pastor Saunders asking for details of the charges against the plaintiff and contained these statements which are made the basis of the second cause of action:

"1. Failure to pay debts; one of the charges brought against him was that he left Shime [Japan] owing several months rent which he failed to pay. Another was that he failed to pay a girl working as a servant in his house hold.

"2. Taking property not belonging to him; this charge was made about some church furniture that the ladies at the American Air Base had brought for the church at Shime. Which, as I understand, he took back, but at the time the charge was made, he still had in his possession."

The letter of October 23, 1961, was a reply to the following letter from Elder Potter:

"2525 South 51st Terrace
Kansas City 6, Kansas
October 10, 1961

"Elder Frank Harty
5618 S.E. Nehalem
Hillcrest Baptist Church
Portland, Oregon

"Dear Brother Harty:

"Gospel Baptist Church has authorized me as her pastor to write to the Hillcrest church requesting

an answer to the crisis which has arisen among the A.B.A. due to the recall of the Murphys from Japan. Brother Patterson stated in a recent letter to me that 'another church in the A.B.A. could investigate the circumstances pertaining to the Murphys' recall' as missionaries from Japan. Our church voted in regular monthly business meeting to do this.

"The Murphys have been receiving nominal support from Gospel Baptist Church since they departed for Japan two years ago, and we were understandably surprised when we learned from the Searchlight that they had been recalled, especially so when no reasons for this action were given.

"We also learn that although Brother Murphy has requested a hearing before Hillcrest Baptist Church for proof of the charges made against him, a hearing has been refused him. Our church regards this as an unscriptural action against the Murphys. The Bible has clear teaching in regard to matters concerning discipline as recorded in Matthew 18:15-17:

" 'Moreover if thy brother shall trespass against thee, go and tell him his fault between thee and him alone: if he shall hear thee, thou hast gained thy brother. But if he will not hear thee, then take with thee one or two more, that in the mouth of two or three witnesses every word may be established. And if he shall neglect to hear them, tell it unto the church: but if he neglect to hear the church, let him be unto thee as an heathen man and a publican.'

"Far from *neglecting* to hear the charges that the Hillcrest Church has against the Murphys, they have been doing everything in their power to obtain a hearing to ascertain the charges against them so that they might be adjudged guilty or innocent in a fair manner. If the church that made the charges against Brother Murphy is unable to bring forth these charges and prove them, then she owes

him a public apology and complete restoration of fellowship.

"Brother Harty, Gospel Baptist Church feels we have a right to know, as a church which contributed partial support of the Murphys, what were the charges made against the Murphys. Also, who preferred the original charges against the Murphys. Are they of Baptist origin, or did they originate outside the local church? Gospel Baptist Church requests of Hillcrest church that she send messengers to a council of churches of the A.B.A. and show full proof for her actions as a church in the Murphy case. Failure to comply with our request will be taken as an admission that Hillcrest Baptist Church acted unscripturally with regard to the Murphys.

"Also, Brother Harty, Gospel Baptist Church would like further information concerning Brother Patterson's activities with and advice to the Hillcrest church pertaining to the recall of the Murphys. The following is a paragraph from a letter written to your brother, Elmore Harty, on January 13, 1961, and signed by Brother A. L. Patterson:

" 'You say the churches out there will do "all they can" in the Murphy case. There is just one thing that needs to be done, and I am not in a position to ask that it be done. If the church that endorsed the Murphys realize they have made a mistake, they can, and should, WITHDRAW their recommendation. That will clear the messengers from the churches of any responsibility in the matter, and they will have nothing to do but respect the decision of that church. If you pass this on to your brother, let it be your own thinking. Don't tell him that I think the church should do that. This is their business. The least that is said about it outside will be the best. Their action can be reported to the meeting at Miami. If it is reported and spread promiscously [sic] before then, it might work for confusion. The Murphys might manage to get endorsement from another church.'

"When Brother Murphy was in my home recently, I showed him the letter written to me by Brother Patterson, and he then showed me the last letter written to him by Hillcrest Baptist, refusing to give him a hearing before the church. In comparing the letters, we found they had been written on the same typewriter. Since Brother Patterson was in Oregon at this time, we can only conclude that this letter from Hillcrest to Brother Murphy was, in fact, written by Brother Patterson. We respectfully request that your church confirm or deny this fact. If Brother Patterson did indeed compose the letter to the Murphys denying them a hearing before the church, then we suggest that Hillcrest Baptist Church restore the Murphys and make apology to all the churches of the A.B.A., asking the churches to rescind the action taken by the messengers in Miami, Florida.

"Brother Harty, Hillcrest can no longer remain silent upon this matter. Gospel Baptist Church intends to bring every effort to bear in order to bring these dealings with the Murphys into the light of day. The clear teaching of the Scripture is, if it's right, it can bear the light. 'For there is nothing covered, that shall not be revealed; neither hid, that shall not be known. Therefore whatsoever ye have spoken in darkness shall be heard in the light; and that which ye have spoken in the ear in closets shall be proclaimed upon the housetops.'

"Yours in Christ,

"GOSPEL BAPTIST CHURCH
 [Sgd.] "ELDER CHARLES POTTER
"Charles Potter, Pastor"

Brother A. L. Patterson, referred to in the foregoing letter was the secretary-treasurer of missions of American Baptist Association (ABA) of which the various churches mentioned in the record are members.

The defendant's letter to Elder Potter (which is reproduced exactly as written) follows:

"5618 S. E. Nehalem St.
Portland 6, Oregon
October 23, 1961

"Elder Charles Potter
Pastor Gospil Baptist Church
2525 South 51 Terrace St.

"Dear Brother Potter (Also an open letter to all A.B.A. Churches)

"Your letter was the last of several that has been written to this church, and to men in this area inquiring as to this churches actions concerning the Murphy's case. We entend and hope this to be the last letter that we will have to write on this matter. In the first place you and others like you are judging one of the Lord's Churches. You are insinuating that you know more about how to run this churches business than she dose. In the second place you error in your scripture application of Matt. 18:15-17. This is given for personal offences, and not for misconduct of a missionary. Rather Jesus commends the Church at Ephses for. '. . And how thou canst not bear them which are evil. And thou hast tried them which say they are Apostles, and are not, and hast found them liars.' Rev. 2:2 B. This is the thing the Church did was to judge his fruits, Jesus says, 'By their Fruits you shall know them.'

"Brother Potter and others that are listening to this man. If you would like to know the 'Fruits' of this man, or his record that he has made for himself on the West Coast; we would advise you to secure a copy of the report of the private investigator that Sister Homer Branson employed to envestigate this man.

"Now there is one reason if this church had no other, which we have many and believe them to be true, but this one reason we would have removed

our endorsement and that is for starting an unscriptual work in Japan. Mr. Murphy started a work there without any church authority. We believe the commision given by Christ was to the church not man, and which without Church authority a mans work is only of man. Mr. Murphy is not a member of this church; he was lettered out to the Shime Church by his own request, which we protested in letters to him as not regular baptist practice, but due to his insistence the church finaly granted him his wife and his daughter letters to the Shime Church in Japan. These letters were to make them members of the Shime Church not authority to start one. After wrecking the work at Shime and wreck it he did. Then he started his own work, again; may we remind you without any church authority with two members of the Hillcrest Baptist Church as charter members Without this Churches knowledge or consent. These were him son David and Ella David's wife. We wrote several letters trying to show them that without church authority the work was unscriptual. After several letters were exchanged, we were told to mind our own business, which certainly we did by excluding Davis and Ella Murphy on the grounds of entering into an unscriptual organization.

"Now as Bro. Patterson and his activity in this matter. You have been missinformed on many things, and one of these is that Bro. Patterson hasn't been to Oregon, not in the last few years any way. There is no man whom we respect more than we do Bro. A. L. Patterson. He is a great man doing a great job. A man who minds his own business, and might we sugest Bro. Potter you try to do the same, instead of following a man who has destroyed every thing he touches. Whose only end is destruction. However if you think we are wrong you can take this man by statement and ordain him. Then he will be your responsibility. You can answer for his conduct, but as far as the Hillcrest Baptist Church is concerned. We have washed our hands of the whole matter.

"Now as to the information that you had as the denial of this church to give Murphy a church trial. He said he didn't want one. All he wanted to do was throw charges against the preacher brothern. We advised the church no to hear his, as this is none of our business. If he has charges against them let it be made to their own church. They are responsible for them not us. Now as for him having a letter from this church denying him the right as you say he has. All we can say is that he never got it from this church. For we never wrote one. He was to call the pastor for the churches discussion, which he never did.

"In answer to the fifth paragraph in your letter. 'If the Church that made these charges against Bro. Murphy is unable to bring forht these charges and prove them, then she owns his a public apology, and complete Restoration of fellowship. 'Brother Potter, we want to remind you again that the Hillcrest Baptist Church is a sovern body, who is responsible to Christ and to him alone. We will not be judged by you or any other man, neither will you tell us what to do. There is only one regret that we have to this matter. We wish we had investigated this man before we indorsed him. We were fooled by him as many of you were, and many we feel still are. And in this thing we wish to ask the forgivness of our sister churches. Not because we withdrew our endorsement, but because we had the little sense to endorse him in the first place.

"Brother Potter, as for your right to know the Charges against Murphy, these charges were read in the national meeting in Mimima. There is nothing secreat about them. Now, as to the wittness in this case they are and must remain confidential. This confidence was promised to them when the investigation was made. We can not or will not break this confidence. You asked if they were Baptist, some were and some weren't. One of the quilifacations of a preacher is that he must be well spoken of. Those without as well as those within.

I Tim. 3:7 A. Especially so we feel this to be true of a missionary in a forign land. We feel that Mr. Murphy disgraced himself and the churches of the A.B.A. by his conduct in Japan.

"A few words in conclusion. The Hillcrest Church could have took the path of least resistance and allowed this man to go on with his program of distruction, hatred and tirancy. His very nature is to rule as a dictator or distroy those he can't rule. We have made a complete and thorough investigation into the whole afair and took the only course we could take, and hold our heads up as a Church that Jesus could be proud of. Let us say this in closing; this church had no pressure from Bro. Patterson's office or any outside influence from any one in this matter. The removal of this church's indorsement to Mr. Murphy as missionary to Japan, and also his ordianation to preach was a result of a thorough, and complete investigation into the matter. Which this church takes full and complete responsibility. Mr. Murphy is showing his true nature. His aim is to divide and split the churches of the A.B.A. To distroy that which opposes him, Bro. Potter, He will do this very thing as long as you, your church and others will listen to him. For the sake of Christ stop and think what you are doing. You are allowing him to use you to carry out satans plan of division and distruction. Our prayer is that the Gospil Baptist Church and all others will recognize the fact that the Hillcrest Baptist Church is a sovern body and can carry on the Lords business, by the Grace of God. The removal of Mr. Murphy was the only thing we could do, for the good of the cause of Christ.

"Done by the order of the Hillcrest Baptist Church.

"Elder Frank Harty (Pastor)
[Sgd.] "FRANK HARTY
"Betty Cram (Church Clerk)
[Sgd.] "BETTY CRAM"

The first assignment of error is that the court erred in overruling defendant's demurrer to plaintiff's second amended complaint.

The second amended complaint was filed June 25, 1962. Thereafter pleadings were filed as follows:

July 26—the defendant's answer

July 30—the plaintiff's reply

October 3—the defendant's amended answer

October 29—the defendant's second amended answer

October 31—plaintiff's reply to the second amended answer.

November 14—defendant's demurrer to both causes of action in the second amended complaint.

The trial commenced November 14, 1962. Before any testimony was taken counsel for defendant stated to the court that he wished to present a demurrer. The judge inquired whether counsel had presented the demurrer to the presiding judge and, upon receiving an answer in the negative, said: "It will be denied. I will take it up later. These demurrers are supposed to be presented—". Counsel for the defendant interposed: "This is based on facts not sufficient to constitute a cause of action."

On the second day of the trial, after the plaintiff had rested, counsel for the plaintiff informed the court: "I have submitted to the clerk a third amended complaint" and the court said: "I will take that up later." The trial court file contains a third amended complaint which bears the filing mark November 15, 1962.

So far as the record discloses, the demurrer was

not taken up later and was never again called to the court's attention. Neither does it appear that a formal ruling was made by the court upon the plaintiff's right to file a third amended complaint. In the instructions, however, the court told the jury that "the issues in this case are contained in the plaintiff's third amended complaint, defendant's second amended answer, and the reply of the plaintiff to that answer." No exception was taken by either party to this instruction.

■ The record does not permit us to consider the defendant's demurrer. The statute provides: "The defendant may demur to the complaint within the time required by law to appear and answer * * *." ORS 16.260. The demurrer was not filed until after the case was at issue on the second amended complaint, the answer and the reply; and this was after the time allowed by law. Assuming that the court had authority to authorize the filing of the demurrer at that time, no such permission was sought by the defendant or granted by the court. No demurrer to the third amended complaint, on which the case was tried, was filed. Even though the demurrer could properly be treated as though it were a challenge to the third amended complaint, and there is no justification in the record for so treating it, it was never passed on by the court. In *Minter v. Minter,* 80 Or 369, 372-373, 157 P 157, it was held that, after a general demurrer was filed against the complaint, and without the same having been argued to the court the defendant answered, the case should stand and be determined "as upon the sufficiency of a pleading after verdict."

■ In these circumstances the case stands and should be determined as upon the sufficiency of a pleading after verdict. The general rule in such a case is "that wherever facts are not expressly stated which are so

essential to a recovery that, without proof of them on the trial, a verdict could not have been rendered under the direction of the court, there the want of the express statement is cured by the verdict, provided the complaint contains terms sufficiently general to comprehend the facts in fair and reasonable intendment." *Nicolai v. Krimbel*, 29 Or 76, 84, 43 P 865. This rule has been followed by this court in numerous cases. See *Western Feed Co. v. Heidloff*, 230 Or 324, 342, 370 P2d 612, and cases there cited. The third amended complaint alleged in its first cause of action that the letter to Elder Charles Potter, which was made a part of the pleading by reference, was "maliciously" "composed and caused to be published of and concerning the Plaintiff", that it was "false and defamatory" and "tended to expose the Plaintiff to public hatred, contempt and ridicule." It was further alleged that plaintiff's usual and customary profession at the time and for many years prior thereto was that of a Baptist missionary minister, that the letter was duly addressed and circulated "[a]s an open letter to all A.B.A. Churches" and because of this the plaintiff has been unable to follow his profession.

In the second cause of action there are similar allegations as to plaintiff's profession and respecting the following charges in "certain false and defamatory letters" published by the defendant of and concerning the plaintiff:

"1. Failure to properly pay his debts.
"2. Taking property not belonging to him."

■ It is contended by the defendant that, inasmuch as it appears on the face of the complaint that the letters were written on a privileged occasion and the bur-

den was upon the plaintiff to plead and prove actual malice, it was necessary for the plaintiff to allege facts showing such malice and the use of conclusionary words such as "maliciously" and "false" and "defamatory" are not sufficient. Next, it is said that when damages to professional reputation are sought, it must be alleged that the words were published of plaintiff in connection with his profession. Whatever might be the merit of these contentions, had the third amended complaint been tested by demurrer, the pleading is clearly sufficient in these particulars when the attack on it is delayed until after the commencement of the trial. The next contention is, in the words of the brief, that "[e]ssential allegations of complaint cannot be supplied by an exhibit," and appears to be based upon the idea that the contents of the letter to Pastor Potter, which was made an exhibit to the first cause of action in the third amended complaint, cannot be examined to determine whether the letter was maliciously published. As will appear later in our consideration of the question whether there is evidence that the defendant was motivated by actual malice, this contention is based upon a misapprehension of the law. Finally, it is asserted that the publications are not actionable per se. We will discuss that question in connection with the second assignment of error, which is directed to the court's denial of defendant's motion for a judgment of involuntary nonsuit.

The sole ground of the motion for a nonsuit is failure of the plaintiff to prove any damage caused him by the publications. If the words used by the defendant were libelous per se, the motion was properly denied because, in that case, damage would be presumed, *Marr et al. v. Putnam et al.,* 196 Or 1, 29, 246

P2d 509. And see Restatement, 3 Torts, § 569 and Comment b thereto, where the explanation "actionable per se" is used and explained. We have held that a charge that a person failed to pay his just debts is not libelous per se, *Hudson v. Pioneer Service Co.,* 218 Or 561, 346 P2d 123. The plaintiff in that case was a logger who had been listed as a delinquent debtor in a credit report distributed by the defendant as a service to its subscribers. It is accepted doctrine, however, that words may be actionable when used with respect to a clergyman although the same words would not be actionable if used of others, Newell, Slander and Libel (3d ed) 224, § 197; Odgers on Libel and Slander (6th ed) 25; 53 CJS 88, Libel and Slander § 39; *Pentuff v. Park,* 194 NC 146, 138 SE 616, 53 ALR 626, with Annotation at 637. Under this rule we think that to charge a clergyman with failure to properly pay his debts, as in the letter of August 30, 1961, to call him a liar and to accuse him of a "program of distruction, hatred and tirancy," of having the aim "to divide and split the churches of the A.B.A." and of carrying out "satans plan of division and distruction," as in the letter of October 23, 1961, are defamatory and actionable. It is libelous to publish of a man that he is a liar, regardless of his profession or occupation, Townshend on Slander & Libel (4th ed) 207, § 177; *Colward v. Black et al,* 110 Ga 642, 36 SE 80; *Paxton v. Woodward,* 31 Mont 195, 78 P 215, 107 Am St Rep 416. The defendant argues that the charge that the plaintiff took property that did not belong to him does not mean necessarily that he stole it, and that the words should be interpreted in their innocent sense. We need not decide the question because there was no motion to remove that charge from the consideration of the jury and proof that the other

defamatory statements were published by the defendant was sufficient as against the claim that there was no evidence of damage.

The defendant assigns as error the court's denial of his motion for a directed verdict based upon the ground that there was no proof of actual malice. We think the ruling was correct.

 Concededly, the letters were written on a privileged occasion. They were communications from one minister of the Baptist Church to another on a subject of common concern to both of them, to wit, the charges which led to the dismissal of the plaintiff. Communications in the course of church discipline are so privileged, Prosser on Torts (2d ed) 619; *Grant v. The State,* 141 Ala 96, 37 S 420; *Servatius v. Pichel,* 34 Wis 292; *Slocinski v. Radwan,* 83 NH 501, 144 A 787, 63 ALR 643; *Whiteley v. Adams,* 9 L T N S 483. Such a communication, if bona fide made, even though it contains criminating matter which otherwise would be actionable, is protected by the privilege, and where a prima facie case of privilege is established, as here, the burden devolves upon the plaintiff to produce evidence of actual or express malice, *Cribbs v. Montgomery Ward & Co.,* 202 Or 8, 13, 272 P2d 978, and authorities there cited. Proof of such malice may be intrinsic or extrinsic. The words used may themselves be evidence of actual malice, Newell, op. cit. 414, § 418; Folkard's Starkie on Slander and Libel 386, § 325; *Fryer v. Kinnersley,* 15 C B (NS) 422, 33 L J C P 96, 12 W R 155, 9 L T 415, 10 Jur (NS) 441; *Kilgore v. Koen,* 133 Or 1, 13, 288 P 192; *Peck v. Coos Bay Times Pub. Co. et al.,* 122 Or 408, 422, 259 P 307; and, of course, there may be evidence of malice *aliunde* the communication. See Newell, op. cit. 411, § 414.

■ It should be here noted that, although the plaintiff at the time of the publications was no longer a minister of the Baptist Church, yet, since the defendant's letters related, at least in part, to his conduct while he was engaged in the ministry, the words used are nonetheless libelous. As stated in Newell, op. cit. 209, § 182:

> "It is libelous to impute guilt of improper conduct in office or wicked, corrupt or selfish motives or incompetency for his position though the defamed person does not at the time hold the office or pursue the calling."

The rule is illustrated in *Cramer v. Riggs,* 17 Wend 209, where, as the court said:

> "It was insisted on the argument that the publication was not libellous, because the term of the plaintiff's office as a senator had expired previous to the publication which imputed to him corrupt conduct in his office of senator, * * *."

But it was held that in libel, as distinguished from slander, it was not the effect upon his "official character" upon which the suit was predicated, but it was "the effect of the imputation of previous misconduct, official or otherwise, upon his *private character* at the time of the publication, that constitutes the ground of complaint—holding him up as an individual who had been guilty of corruption in office, and hence capable of like conduct if again trusted, thereby invoking upon him the odium and the scorn of the public." See, also, Restatement, 3 Torts, § 569, Comment e.

Furthermore, the plaintiff claimed in his testimony that he was not guilty of the misconduct with which he was charged while he was a missionary in Japan, and that he had been unjustly dealt with by the Hillcrest Church in relieving him of his assignment and

revoking his ordination. He testified that after his return to this country he spent time traveling about and visiting other churches in an unsuccessful effort to re-establish himself as a missionary. If his testimony was true—and the jury could have so found— the alleged libelous statements concerning his subsequent conduct might well be viewed as though they related to him while actually engaged in the ministry.

The letter defendant wrote to Pastor Saunders answered the latter's inquiry as to the charges against the plaintiff and went on to characterize the plaintiff's conduct by saying "that the church felt he had betrayed our trust and the trust of our sister churches, and that he had disgraced himself and our church and the churches of the A.B.A. by his conduct as a missionary in Japan."

There was no extrinsic evidence that defendant was actuated by malice in the writing of this letter, and we question whether, having regard to the information in the defendant's possession and the other circumstances, in particular, that the defendant was pastor of the church which had endorsed the plaintiff for missionary work in Japan, it could justly be said that the words quoted are evidence of malice. Upon this question it is said in Odgers on Libel and Slander (6th ed) 291-292:

> " 'It is sometimes difficult to determine when defamatory words in a letter may be considered as *by themselves* affording evidence of malice' (*per* Bramwell, L.J., in *Clark* v. *Molyneux*, 3 Q. B. D., at p. 245). But the test appears to be this: take the facts as they appeared to the defendant's mind at the time of publication; are the terms used such as the defendant might have honestly and *bona fide* employed under the circumstances? If so, the Judge should stop the case. For if the defendant

honestly believed the plaintiff's conduct to be such as he described it, the mere fact that he used strong words in so describing it is no evidence of malice to go to the jury (*Spill* v. *Maule*, L. R. 4 Ex. 232; 38 L. J. Ex. 138; *Adam* v. *Ward*, [1917] A.C., at pp. 327, 330, 335)."

Since, however, there was no separate motion to take from the jury the second cause of action based on the letter to Pastor Saunders, but the motion for a directed verdict was against the whole case, if there was evidence of malice in the publication of the letter to Elder Potter, the basis of the first cause of action, the motion was properly denied.

Elder Potter's letter to the defendant comprised both an inquiry as to the charges against the plaintiff and severe strictures on the defendant and the Hillcrest Church for their action in terminating the plaintiff's services as a missionary without first having given him a hearing. It was couched in language that justified an equally vigorous response and the defendant's letter reveals that he was well able to take care of himself in such an encounter. As a part of his defense against Elder Potter's charges, he could justifiably descant on what he honestly believed to be the plaintiff's actions and, within limits, his character and fitness for the ministry. But if the evidence discloses that the defendant did not act in good faith, but took advantage of the occasion to injure the plaintiff in his character or standing the communication would cease to be privileged.

Where improper motives are unnecessarily imputed there is evidence of malice to go to the jury, Newell, op. cit. 415, § 420; Odgers, op. cit. 292; *Fryer* v. *Kinnersley*, supra; *Gilpin* v. *Fowler*, 9 Ex 615, 156

Eng Rep (Ex) 263, 23 L J Ex 152, 18 Jur 293. More-over, the defendant must have had reasonable grounds for believing the defamatory matters to be true. Section 601 of the Restatement of Torts reads:

"Except as stated in § 602 [not here relevant], one who upon a conditionally privileged occasion publishes false and defamatory matter of another abuses the occasion if, although believing the defamatory matter to be true, he has no reasonable grounds for so believing."

Dean Prosser says:

"* * * Once the existence of the privilege is established, the burden is upon the plaintiff to prove that it has been abused by excessive publication, by use of the occasion for an improper purpose, or by lack of belief or grounds for belief in the truth of what is said. Unless only one conclusion can be drawn from the evidence, the determination of the question whether the privilege has been abused is for the jury." Prosser on Torts (2d ed) 629 § 95.

■ The defendant's letter to Elder Potter relates both to the plaintiff's conduct while a missionary in Japan and after his return to this country in August, 1961. The letter attributes to the plaintiff a motive to destroy the churches of the A.B.A. and characterizes it as "satans plan of division and distruction."

The defendant was asked on cross-examination to give the basis of these statements and he answered:

"Sir, threats that he [the plaintiff] made to Elder Jim Ross that it was his intention, was to divide the American Baptist Association and close the doors."

Elder Ross, a former member of the Hillcrest Church testified that in August, 1961, after the plaintiff's return from Japan, he did make such a threat.

This testimony was given before the defendant's testimony on the same subject. The defendant did not state when, if at all, Elder Ross told him about the alleged threat. Elder Ross' testimony indicates that he did not discuss the subject with the defendant until after this action was commenced. We quote from his testimony:

"Q You talked to Mr. Harty about this matter, haven't you?

"A I have never discussed it. I don't even know what the charges for sure are. I have discussed it in, personal feelings with Brother Harty, but don't even know what the charges are against Mr. Murphy, I don't.

"Q What do you mean by personal feelings?

"A Friendship.

"Q You have discussed Mr. Murphy, haven't you?

"A Yes, certainly we have.

"Q The tenor on that conversation, what were the general statements on Mr. Harty's part about Mr. Murphy?

"A The only thing that was said there, Frank had informed me after Brother Murphy had come back that he was being sued and we discussed it in brief conversations. I would say not more than five minutes at any time that we sat down and discussed it, and as far as knowing the exact conditions of the case, what the charges are or anything, I don't know that to this day."

We think the record presents a jury question as to whether the defendant had reasonable grounds for believing the defamatory statements just referred to and as to whether they were motivated by actual malice.

The motion for a directed verdict was, therefore, properly denied.

There are other assignments of error, but they are so obviously wanting in merit as not to deserve discussion.

The judgment is affirmed.

DENECKE, J., specially concurring.

In affirming the trial court's denial of the motion for nonsuit, the majority stated: "If the words used by the defendant were libelous per se, the motion was properly denied because, in that case, damage would be presumed." I agree with that statement but not necessarily with what may be thought to be its corollary,—if the words used are not libelous per se, damages are not presumed.

There is respectable authority for the proposition that libel in any form is actionable without proof of special damages. It is not necessary in this appeal to determine whether or not that authority is correct; however, I specially concur to indicate that such a determination is still unresolved. See Prosser's analysis of Oregon decisions in 46 Va L Rev 839, 846, footnote 50 (1960), and Dean Carpenter's criticism of Oregon decisions in 7 Or L Rev 353 (1928).

O'CONNELL, J., joins in this specially concurring opinion.