Argued February 2, affirmed March 9, petition for rehearing
allowed April 12, rehearing June 7, reversed
August 12, 1966

# HINKLE *v.* ALEXANDER

411 P. 2d 829
417 P. 2d 586

*John C. Anicker,* Oregon City, argued the cause for appellant. On the brief were Jack, Goodwin & Anicker, Oregon City.

*George L. Hibbard,* Oregon City, argued the cause for respondent. With him on the brief were Hibbard, Jacobs, Caldwell & Kincart, Oregon City.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, DENECKE and LUSK, Justices.

SLOAN, J.

This was a libel action. A jury returned a verdict for plaintiff. The court allowed a motion for judgment n.o.v. Plaintiff appeals.

Defendant operated a restaurant, plus sleeping facilities, in Estacada which was primarily patronized by loggers working in the area. Frequently he would allow credit to his customers if the employer of the particular customer would agree to pay the bill. Plaintiff was a contract logger. One of plaintiff's employees obtained credit from defendant and failed to pay. Plaintiff had not previously agreed to pay the bill of this employee. Defendant sought payment of plaintiff and plaintiff refused. Defendant then posted a notice in his place of business which contained the unpaid bill with the words "Wayne Hinkle owes this to us" written on the face of the bill. This is the claimed libel.

██ On this appeal plaintiff's only argument is that the words were actionable per se. This case is, therefore, governed by *Hudson v. Pioneer Service Co.,* 1959, 218 Or 561, 346 P2d 123, where it was held that publication of non-payment of a debt, except within circumstances not presented here, is not libelous per se.

Affirmed.

DENECKE, J., specially concurring.

I specially concur again to question whether it is necessary to allege special damages when the defamatory matter is published in the form of libel, as distinguished from slander. In *Reiman v. Pac. Devel. Society,* 132 Or 82, 284 P 575 (1930), we held that if the matter was defamatory, and published in the form of libel, it was actionable without any proof of special

damages. "\* \* \* [I]f a complaint alleging oral defamation, does not aver special damage it can bring the plaintiff no relief unless it discloses a situation within one of the four above classifications; but that in an action of libel the complaint is sufficient if the alleged defamatory words bring the plaintiff into the public hatred, contempt or riducule." 132 Or at 88

*Hudson v. Pioneer Service Co.,* 218 Or 561, 346 P2d 123 (1959), and other decisions of this court cited therein may be to the contrary.[1] Those decisions use the phrase "libel per se"; special damages must be proved. I am not certain whether our more recent decisions intend to use "libel per se" to denominate a publication which is defamatory without proof of extrinsic facts or whether we have intended to merge libel and slander and allow recovery without proof of special damages only for certain classes of defamation, which, if in the form of slander, are uniformly termed "slander per se."

3 Restatement, Torts § 569, adopts the rule we announced in *Reiman v. Pac. Devel. Society,* supra.

> "One who falsely, and without a privilege to do so, publishes matter defamatory to another in such a manner as to make the publication a libel is liable to the other although no special harm or loss of reputation results therefrom." 3 Restatement, supra.

The law as stated in Restatement was also stated to

---

[1] It may be that Hudson v. Pioneer Service Co., supra, can be construed as not involving defamation at all. The publication was a credit report that the defendant was delinquent on one account. This may be the tort which legal writers label "injurious falsehood." In this tort the publication need not be personally defamatory, but it must be false and cause special damages which must be proved. 4 Restatement, Torts § 873; Prosser, Torts (3d ed 1964), 938-950.

be the law by the two venerable writers on the subject,—Odgers, Libel and Slander (6th ed 1929), at 309, and Newell, Libel and Slander (4th ed 1924), at 834.

No reason for a departure from this rule of law has been expressed in our decisions. It appears that perhaps in this jurisdiction, if a departure was made, it was the result of a confusion of libel and slander. In *Ruble v. Kirkwood,* 125 Or 316, 266 P 252 (1928), the publication was by letter which, if defamatory, would, therefore, be libel rather than slander. The court said: "* * * [I]t is settled here that an action for libel cannot be based on a charge of having committed a crime unless it is one involving moral turpitude: *Clark v. Morrison,* 80 Or. 240 (156 Pac. 429); *Davis v. Sladden,* 17 Or. 259 (21 Pac. 140)." 125 Or at 320. The cases cited are both slander cases. However, later in the opinion the court seems to be adopting the rule that libel is not actionable without proof of special damages if it is necessary to prove any extrinsic facts to show that the writing is clearly defamatory.

What the state of American law now is in this area appears to be the subject of present debate by the draftsmen of Restatement (Second), Torts. The view that the existing Restatement rule, § 569, is a correct statement of the present state of the law, and should continue to be the law because it is based upon sound policy, is presented by Eldredge, *The Spurious Rule of Libel Per Quod,* 79 Harv L Rev 733 (1966). The contrary view of the present state of the law is advanced in Prosser, Torts (3d ed 1964), 780-783.

The reason for this opinion is to state the problem and to urge that the problem be analyzed. Unless such a process occurs, the Oregon law on the subject will

be the product of initial inadvertence made difficult to dislodge by precedents based upon the initial inadvertence.

**ON PETITION FOR REHEARING**

*John C. Anicker,* Oregon City, argued the cause for appellant. On the briefs were Jack, Goodwin & Anicker, Oregon City.

*George L. Hibbard,* Oregon City, argued the cause for respondent. With him on the brief were Hibbard, Jacobs, Caldwell & Kincart, Oregon City.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, HOLMAN, LUSK and SCHWAB, Justices.

SLOAN, J.

A rehearing was allowed in this case for the purpose of resolving the question stated in the concurring opinion in *Murphy v. Harty,* 1964, 238 Or 228, 250, 393 P2d 206, 217, and renewed in the concurring opinions in *Fowler v. Stradley,* 1964, 238 Or 606, 614, 395 P2d 867, 873, and in the concurring opinion originally filed in this case. The question is: Should we adhere to the common law rule in respect to defamation by libel which is adopted as Restatement, 3 Torts, Ch 24, § 569 (1938):

> *"One who falsely, and without a privilege to do so, publishes matter defamatory to another in such a manner as to make the publication a libel is liable to the other although no special harm or loss of reputation results therefrom."*

In contrast to the common law rule is that which limits actionable libel, in the absence of a claim for special damages, to the publishing of matter defamatory on its face or *per se,* as in slander. Basically, this requires that the defamation must accuse the victim of the commission of a crime, or derogatory words in reference to the person's business, trade or profession, or an assertion of unchastity to a woman, or of having a loathsome disease. If the implication of the defamatory words is not within one of these four classifications it is held that the defamation, if any, is a libel *per quod* and special damages must be alleged and proven. See Prosser, Torts (3d ed 1964) page 782.

As noted in the concurring opinions above mentioned, our prior decisions are not conclusive on the subject. In *Ruble v. Kirkwood,* 1928, 125 Or 316, 266 P2d 252, we followed the rule that in libel, as in slander, it was necessary that the publication be defamatory on its face otherwise it would be necessary to allege and prove special damages. Two years later in *Reiman v. Pac. Devel. Society et al,* 1930, 132 Or 82, 284 P 575, we said that the *Ruble* case was not intended to limit libel to the same restrictions that applied to slander and we followed the common law rule. In *Hudson v. Pioneer Service Co.,* 1959, 218 Or 561, 346 P2d 123, we appear to have followed the libel *per se* rule. However, in that case as well as in *Murphy v. Harty,* 1964, 238 Or 228, 393 P2d 206, we did look to extrinsic facts to determine whether or not the published matter was libelous *per se.* In each of these cases the alleged defamation, as in the instant case, was an assertion that the plaintiff had failed to pay his creditors. In *Hudson,* it was said that because plaintiff was a logger, credit was not essential to his occupation and harm to his credit would not impair

his ability to work, therefore, as to him the publication was not libelous *per se*. In *Murphy*, the plaintiff was a minister, and in reliance upon accepted authority, we held that such a claim about a minister was libelous *per se;* not, however, as a business libel but as a personal one.

Our situation is much like that reported in the Wisconsin case of *Martin v. Outboard Marine Corporation*, 1962, 15 Wis2d 452, 113 NW2d 135. In that case, after reviewing its prior inconsistent decisions, the court decided, "We adhere to and adopt the common-law rule of libel as stated in sec. 569* of the Restatement of Torts on Defamation, that all libels are actionable without alleging or proving special damages." (*Footnote omitted). 113 NW2d at 139.

The New York Court of Appeals in the recent case of *Hinsdale v. Orange County Pub.*, 1966, 17 NY2d 284, reviewed and reconciled its prior decisions and, without saying so in as many words, followed the common law rule that it had applied in some of its decisions, but not in others.

The opinion of the Wisconsin court is very persuasive. So is the New Jersey case of *Herrmann v. Newark Morning Ledger Co.*, 1958, 48 NJ Super 420, 138 A2d 61, beginning at page 73.

The question of which of the two rules should be adopted in the proposed Restatement 2nd on the subject of Defamation is currently of consuming interest to the members of the American Law Institute and of other members of the bench and bar who are following the debate with equal interest. Professor Prosser is strongly urging that the Restatement 2nd should adopt the rule which, he asserts, is now followed by a majority of the American courts, i.e. that special damages

must be established unless the defamatory meaning of the publication is apparent from the published matter. Professor Prosser has advanced his arguments in an exhaustive brief prepared for the members of the American Law Institute and which has been published in somewhat condensed form in 79 Harv L Rev, at page 1629, by the title of More Libel Per Quod. He had earlier presented the same point of view in the third edition of Prosser on Torts, 1964, beginning at page 780, and in an article, Libel Per Quod, in 46 Va L Rev 839.

His opposing advocate is Laurence H. Eldredge, Philadelphia lawyer and former Revising Reporter on Torts for the American Law Institute. He supports the present Restatement rule with an energy and zeal equal to that of Professor Prosser. He also has prepared an exhaustive brief for the members of the American Law Institute and which has also been published at 79 Harv L Rev 733, entitled The Spurious Rule of Libel Per Quod. Mr. Eldredge's analysis of the case authority causes him to conclude that "When we turn away from the area of confusion, misconception and misstatement, we find an impressive and constantly increasing body of American law that is in accord with the English law and section 569 of the Restatement of Torts." Id., at 743. He also contends that the trend of decision since the Restatement was published in 1938 is contrary to Professor Prosser's conception of it. He can also state, without much contradiction, that "It is not without significance that the rule that for a libel by extrinsic facts there can be no recovery in the absence of proof of special damages has been universally denounced by the scholars who have given it consideration, including Dean Prosser himself." Id. at 743. In support of the last statement he

makes footnote reference to Prosser on Torts (1st ed
of 1941), 1 Harper & James, Torts, 1956, §§ 5.5, 5.9 and
the writings of other scholars of established authority.
One of these, Professor Henn in Libel-By-Extrinsic-
Fact, 1961, 47 Cornell L Q 14, at page 45, observes that
"Most of the cases which Dean Prosser cites in support
of the fact that the courts are assimilating libel-by-
extrinsic-fact to slander do not appear to be in point."

Of particular local interest is an article by then
Dean Carpenter of the University of Oregon Law
School at 7 Or L Rev at pages 356-357 (1928), where he
denounced the injection of the limitations of a slander
action into the law of libel in these words.

> "While the origin of this departure from the
> orthodox law of libel is obscure, it probably arose
> out of a failure to observe the well established
> distinction between the law of libel and of slander.
> The departure is unfortunate, in the first place,
> because there is no foundation in principle for such
> distinction, and in the second, the distinction which
> exists in slander between words actionable *per se*
> and those actionable only on proof of special dam-
> age, does not parallel that which these American
> courts have introduced into the law of libel. The
> result is to clutter the law up further with anoma-
> lous distinctions which have no merit and which
> lead to further confusion.
>
> "It would be even more unfortunate if the courts
> should impose upon the comparatively simple and
> just rules of libel, the antequated (sic) harsh rules
> of slander, which have been condemned as odious
> and detested.* Rules which for example, permit a
> woman to recover for a ridicule of her hat but deny
> her recovery if she is unmarried and is called a
> prostitute,* should not be substituted for simple
> and just rules." (*Footnote omitted).

At the cited reference to Harper & James it is said:
"The question is libel or no libel, and once it is de-

termined that words are defamatory, damage is 'presumed' as a matter of substantive law.*" Id., at 373. A footnote reference states that "A minority rule has been applied in some cases which have held that if the libel is not 'libelous per se,' special damages must be proved." (Citing cases).

■ We are not so much concerned about which of the opposing rules has the actual support of a majority of the courts. Our prime concern is which rule is the better, more workable and less confusing. We conclude that the Restatement rule is to be preferred and adhere to it. With near· unanimity the writers and the courts that have actually considered the subject agree that imposing the restrictions of the law of slander on to that of libel has added confusion to confusion and produces the absurd results mentioned by Dean Carpenter. McCormick in his work on Damages, 1935, at page 418, states that this deviation from the common law rule "adds an additional complexity to a subject already overburdened with rules which are holding over long after the judicial rivalries which produced them have been forgotten."

In support of the libel *per quod* rule it is contended by some, and as partially stated by Justice Traynor, in *MacLeod v. Tribune Publishing Co.*, 1959, 52 Cal2d 536, 550, 343 P2d 36, 43-44, that the *per quod* rule protects the news media from vexatious actions for trifling claims of libel. Prosser, More Libel Per Quod, *supra,* 79 Harv L Rev, at 1646 et seq. If there is merit to the argument it does not apply in Oregon because of our retraction statutes, ORS 30.150 et seq.

■■ The principal difference between the two rules is this: By the *per quod* rule, when it appears that extrinsic facts are necessary to establish the defamation

the case is dismissed unless special damages are established. In the common law-Restatement rule, the case goes to the jury to decide "whether [the] communication, capable of a defamatory meaning, was so understood by its recipient." Restatement, 3 Torts, § 614 (2). The latter Restatement section has already received the approval of this court. *Fowler v. Stradley,* 1964, 238 Or 606, 613, 395 P2d 867, 872. Subsection (1) of § 614 states that *"The court determines whether a communication is capable of a defamatory meaning."*

■ In the instant case, it will be remembered, defendant posted in a prominent spot in his place of business a statement of an unpaid debt defendant claimed was due him from one of plaintiff's employees. Defendant had written on the face of the bill the words "Wayne Hinkle owes this to us." A few days before the posting, defendant had requested plaintiff to pay the bill and plaintiff had refused. The statement was posted for about 30 days.

At the trial the jury awarded plaintiff actual and punitive damages. The court entered a judgment n.o.v. The reason stated by the court was that it could not be said, as a matter of law, that the publication was defamatory.

Comment c to Restatement § 614, on the function of judge and jury states these criteria for deciding "whether a communication is capable of a defamatory meaning."

"* * * In determining the defamatory character of language, the meaning of which is clear or otherwise determined, the social station of the parties in the community, the current standards of moral and social conduct prevalent therein, and the business, profession, or calling of the parties are important factors. Thus, an imputation may be defamatory as

applied to one person at a given time and place, although it would not be derogatory of another person at a different time or in a different place. In many cases imputations are so clearly innocent that the court is justified in determining the question without submission to the jury. On the other hand, if in the opinion of the court, the question is one as to which reasonable men might differ, it is for the jury to determine which of the two permissible views they will take. * * *."

Plaintiff alleged, and presented evidence tending to prove, that the place and manner of the publication as well as the words used did cause him embarrassment to his credit and carried with it the implication that he was unworthy of credit and a deadbeat. At least, the jury could have drawn these implications from the publication.

■ In *Hudson v. Pioneer Service Co., supra,* 218 Or 561, we held that Hudson had not been defamed by a publication that he had failed to pay bills because he was not in a trade or business to which credit was essential. By the rule we have here adopted it would be immaterial whether or not plaintiff was in a trade or business. If the publication carries with it a fair implication that the person's credit cannot be trusted it should make no difference if he is or is not in a trade or business. If he is defamed he should be entitled to redress.

For these reasons we conclude that the judgment n.o.v. was erroneously allowed.

It follows that the original opinion is withdrawn. The prior decisions of this court that have held that special damages must be proved when extrinsic facts are needed to demonstrate a defamation are no longer to be considered authoritative.

The judgment is reversed with direction to reinstate the jury verdict and enter judgment accordingly.

LUSK, J., concurring.

Apparently, the majority of the American courts follow the so-called *per quod* rule, which is that if a publication is not defamatory on its face, but only in the light of extrinsic facts, it is not actionable unless the plaintiff is able to prove special damages. In several of our decisions this has been stated to be the law of Oregon and for many years has been so understood by the profession. But, with the possible exception of *Hudson v. Pioneer Service Co.*, 218 Or 561, 346 P2d 123, there is no case in which this court has been called upon to apply that rule to a publication not defamatory on its face.

The *per quod* rule seems to have been taken for granted in the cases that have come to this court, both by counsel and the court. Thus in the leading case of *Peck v. Coos Bay Times Pub. Co. et al*, 122 Or 408, 259 P 307, counsel for both parties appear to have agreed that this was the Oregon rule and, so far as I know, the relative merits of the *per quod* and the common law rule have never been debated here.

The court has now carefully considered the decisions of the courts and the writings of learned authors upon the subject and, I think, is fully warranted in its conclusion that the *per quod* rule is an erroneous introduction into the law of libel of a rule peculiar to slander, is illogical, and is more likely than not to lead to denials of justice. The difficulty in many cases of libel of proving special damages is obvious and the argument that there is less danger of harm from a writing which requires proof of extrinsic facts to show its defamatory character than from a

writing defamatory on its face, is to my mind not convincing.

In the instant case I think that the jury could find from the manner in which the defendant chose to publish the fact of plaintiff's indebtedness to him that this was not a bare statement that the plaintiff owed money, but carried with it the implication that he was unworthy of credit. This is defamation.