**Reverend Samuel MARSHALL, Appellant,**

v.

**Reverend Neil MUNRO, Appellee.**

**No. S–4548.**

Supreme Court of Alaska.

Jan. 29, 1993.

James M. Powell and Valli L. Goss, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellee.

Before MOORE, C.J., RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

This case involves claims of defamation, interference with contract and breach of contract by Reverend Samuel Marshall against Reverend Neil Munro. The superior court dismissed the claims on First Amendment grounds. We affirm in part and reverse in part.

### I. FACTUAL AND PROCEDURAL BACKGROUND [1]

Marshall is an ordained minister of the United Presbyterian Church of America. He was employed as the Interim Pastor of the First Presbyterian Church of Anchorage for two years, ending in March 1990. Marshall then travelled to Kentucky and Tennessee to seek employment with another congregation. He accepted a position with the Hillwood Presbyterian Church of Nashville, Tennessee. When Marshall presented himself to begin his employment, he was notified that because of derogatory information received from Munro, the church would not hire him as Pastor.

Munro is the Executive Presbyter of the Presbytery of Yukon, Synod of Alaska Northwest, Presbyterian Church (USA). As part of his church duties, Munro is often requested to respond to inquiries from other Presbyterian Churches which are considering "calling" a specific pastor.

Marshall's complaint alleges Munro maliciously made false statements that Marshall was divorced, was dishonest, was unable to perform pastoral duties due to throat surgery, and had made an improper advance to a member of the Anchorage congregation.

Edgar Paul Boyko, Boyko & Flansburg, P.C., Anchorage, for appellant.

---

1. The superior court ruled on summary judgment, taking the facts in the complaint and the unrebutted affidavit of Munro as being true. For this appeal we also accept the facts alleged in the complaint and the unrebutted affidavit of Munro as being true.

Superior Court Judge Joan M. Katz granted Munro's motion for summary judgment. Judge Katz concluded that the court was without jurisdiction to determine the dispute, because the First Amendment proscribes a civil court from interfering in relationships between the church and its clergy or various members of the clergy. Judge Katz granted summary judgment for Munro and awarded attorney's fees and costs.

## II. STANDARD OF REVIEW

■ The standard of review of the granting of a summary judgment is de novo. *Farmer v. State*, 788 P.2d 43, 46 n. 8 (Alaska 1990). The court must determine whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment on the law applicable to the established facts. *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985). "On questions of law, this court is not bound by the lower court's decision; ... Our duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

## III. DISCUSSION

The First Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees freedom of religion. The First Amendment provides in part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; ..." The State of Alaska also expressly guarantees freedom of religion in Article 1, section 4 of the Alaska Constitution, which states: "[n]o law shall be made respecting an establishment of religion, or prohibiting the free exercise thereof."

Based on freedom of religion considerations, the United States Supreme Court early fashioned principles which limit the role of civil courts in resolving religious controversies. In *Watson v. Jones*, 80 U.S. (13 Wall.) 679, 20 L.Ed. 666 (1871), the court was asked to settle a property dispute turning on the question of whether the church had changed its doctrine, which would invalidate its property interest in the local church. The Supreme Court held: 1) civil judges are incompetent to resolve questions concerning religious doctrine; 2) members of a hierarchical church have voluntarily joined the general church body, thus giving implied consent to its internal governance; and 3) the structure of our political system requires a severe limit on involvement by civil courts in the affairs of religious bodies. *Id.* 80 U.S. at 729–32; *see also* Carl H. Esbeck, *Tort Claims Against Churches and Ecclesiastical Officers: The First Amendment Considerations*, 89 W.Va.L.Rev. 1, 16 (1986).

The decision in *Watson* relied on federal common law. *Kedroff v. St. Nicholas Cathedral of The Russian Orthodox Church in North America*, 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120 (1952), was based upon the Constitution. In *Kedroff* the Court invalidated a New York statute which had attempted to remove control of the Russian Orthodox churches from the central governing hierarchy located in the Soviet Union. The Supreme Court noted that the decision in *Watson* creates the "spirit of freedom for religious organizations, an independence from secular control or manipulation, in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff*, 344 U.S. at 116, 73 S.Ct. at 154.

In *Serbian Eastern Orthodox Diocese for the United States of America and Canada v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976), the Court rejected a bishop's resistance to the reorganization of his diocese and his removal from office. The Court held "a civil court must accept the ecclesiastical decisions of church tribunals as it finds them." *Id.* at 713, 96 S.Ct. at 2382. The Court made a distinction, stating that in property or other civil disputes, civil courts have a duty to adjudicate in neutral terms, if at all, without resolving underlying religious issues. *Id.* at 710, 96 S.Ct. at 2381. But there is no room whatever for independent civil adjudication of "questions ... at the core of

ecclesiastical concern." *Id.* at 717, 96 S.Ct. at 2384; Laurence H. Tribe, *American Constitutional Law* §§ 14–11 at 1241 (2d ed. 1988).

Both parties agree that existing case law supports the position that where issues of ecclesiastical doctrine, faith, creed or internal discipline of an organized church are concerned, the secular courts should abstain.

■ Marshall argues that since this case concerns defamation and breach of and interference with contract, the court is not called upon to consider the church's laws in matters of doctrine, discipline or policy. Marshall claims this case involves secular legal and factual issues devoid of any religious concerns. He concludes the fact that both he and Munro happen to be pastors of the same church is not relevant to the legal issues in the case, and does not turn the case into a religious dispute.

Marshall points to *Murphy v. Harty,* 238 Or. 228, 393 P.2d 206 (1964), which found that letters written by a clerk of the Baptist church to two pastors, defaming another pastor, were actionable in civil court. Marshall argues that this case is no different. The court need only decide based upon the secular common law of torts. Marshall is not questioning the church's authority or decision making bodies. Marshall is asking for redress of a personal wrong caused by Munro. He asserts that just as a battery between two clergy would not make the battery an "ecclesiastical" issue, the fact that both he and Munro are clergy does not make this case "ecclesiastical."

Munro claims the dispute involves clergy hiring decisions, a matter of internal church administration. He claims the dispute is over Marshall's fitness to be "called" as a pastor and is thus a core ecclesiastical dispute, not subject to the jurisdiction of a civil court.

Munro relies on *Higgins v. Maher,* 210 Cal.App.3d 1168, 258 Cal.Rptr. 757 (1989), *cert. denied,* 493 U.S. 1080, 110 S.Ct. 1135, 107 L.Ed.2d 1040 (1990), which held the court lacked subject matter jurisdiction over Father Higgins' claims against Bishop Maher for defamation, invasion of privacy intentional and negligent infliction of emotional distress, breach of the covenant of good faith and fair dealing, and wrongful termination. The court in *Higgins* concluded that a secular court should not right wrongs related to the hiring, firing, discipline or administration of clergy. *Id.* 258 Cal.Rptr. at 760. The court held that as unwarranted and malicious as the Bishop's conduct was, nonetheless his actions were so intertwined with his ecclesiastical duties as to warrant the court's refusal to become involved. *Id.* at 761.

Munro notes his official church duties require him to respond to inquiries from other churches which are considering "calling" a particular pastor. Munro states that the Book of Order requires a pastor to be responsible for a quality of life and relationships that commend the gospel to all persons. He argues that these religious factors show this case is intertwined with ecclesiastical duties and warrant the court's refusal to become involved.

Most cases are consistent in concluding that employment disputes within churches are core ecclesiastical concerns outside the jurisdiction of civil courts.[2] "The relationship between an organized church and its ministers is its lifeblood.... Matters

---

2. *Hutchison v. Thomas,* 789 F.2d 392 (6th Cir.) (dismissing for lack of subject matter jurisdiction an action challenging forced retirement) *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986); *McClure v. Salvation Army,* 460 F.2d 553 (5th Cir.) (dismissing for lack of subject matter jurisdiction class action suit under Title VII claiming women paid less for same work), *cert. denied,* 409 U.S. 896, 93 S.Ct. 132, 34 L.Ed.2d 153 (1972); *Black v. Snyder,* 471 N.W.2d 715 (Minn.App.1991) (dismissing for lack of subject matter jurisdiction breach of contract and defamation suit resulting from dismissal after Black notified officials of sexual harassment but allowing sexual harassment claim), *review denied,* (Minn. August 29, 1991). *But see Reardon v. Lemoyne,* 122 N.H. 1042, 454 A.2d 428 (1982) (holding suit by parochial school teachers against bishop, superintendent and school board members for wrongful termination within civil court's jurisdiction as long as the dispute does not involve doctrinal judgments).

touching this relationship must necessarily be recognized as of prime ecclesiastical concern. Just as the initial function of selecting a minister is a matter of church administration and government, so are the functions which accompany such a selection." *Higgins*, 258 Cal.Rptr. at 760 (*quoting McClure*, 460 F.2d at 558–59). "In our society, jealous as it is of separation of church and state, one who enters the clergy forfeits the protection of the civil authorities in terms of job rights." *Id.*

In this case the superior court was correct in abstaining from hearing Marshall's claim for breach of contract. Marshall's claim that Munro breached a covenant of good faith would require the court to interpret Marshall's and Munro's employment relationship. First Amendment concerns forbid us to imply contractual duties on religious entities. Marshall must rely upon administrative remedies the church provides for his contract claim, even if "the church itself may be inadequate to provide a remedy." *Id.*

█ However, the claims of defamation and interference with contract should not have been dismissed by the superior court. Munro's attempt to characterize the dispute as being over Marshall's qualifications as a pastor is unpersuasive. The questions raised by the defamation claim concern only the statements made by Munro. There is no need for the court to involve itself in Marshall's qualifications. The court needs to determine only if Munro actually said: 1) Marshall was divorced; 2) Marshall was dishonest; 3) Marshall had throat surgery disabling him as a pastor; and 4) Marshall made improper advances to a member of the congregation. If Munro raises the defenses of truth [3] and of privilege,[4] the court need only determine if the facts stated were true and if Munro made the statements with malice (a reckless disregard for the truth or falsity). There is no need to determine if Marshall was quali-

fied to be a pastor or what those qualifications may be.

█ The elements of the tort of intentional interference with contract require that: 1) a contract existed; 2) Munro knew of, and intended to interfere with the contract; 3) Munro did in fact interfere with the contract; and 4) Munro's interference caused Marshall's damages. *Ran Corp. v. Hudesman*, 823 P.2d 646, 648 (Alaska 1991). Marshall must also show that the statements were not privileged or justified. *Id.* None of these elements involve an ecclesiastical dispute or an internal discipline proceeding.

This case is distinguishable from *Higgins*. Higgins made claims of wrongful termination, breach of the covenant of good faith and fair dealing, negligent and intentional infliction of emotional distress, invasion of privacy and defamation. The court in *Higgins* first affirmed the dismissal of the contractual causes of action. The court then reasoned that "in the context of Higgins' averments, the torts recited were simply too close to the peculiarly religious aspects of the transaction to be segregated and treated separately—as simple civil wrongs." *Higgins*, 258 Cal.Rptr. at 761. Accusations of Higgins' misconduct were part of the process by which the priestly faculties were terminated. *Id.*

In this case the core complaint is for defamation. Marshall does not claim he was wrongfully terminated. The defamation and interference with contract claims are not derivative of the contract claim. There is no difficulty in separating the contract claim from the tort claims of defamation and interference with contract. The court need not examine Marshall's qualifications or the qualifications required of pastors in general.

█ Judge Katz found Munro acted in the course of his duty. This fact does not divest the court of jurisdiction. Civil common law has long protected this exact type

---

3. Munro maintains that Marshall was in fact divorced.

4. The superior court's finding that Munro acted within his church duties when responding to inquiries concerning Marshall should be treated as a finding of a conditional privilege.

of communication by granting a conditional privilege.

The common interest of members of religious, fraternal, charitable or other non-profit associations, whether incorporated or unincorporated, is recognized as sufficient to support a privilege for communications among themselves concerning the qualifications of the officers and members and their participation in the activities of the society. This is true whether the defamatory matter relates to alleged misconduct of some other member that makes him undesirable for continued membership, or the conduct of a prospective member. So too, the rule is applicable to communications between members and officers of the organization concerning the legitimate conduct of the activities for which it was organized.

*Restatement (Second) of Torts* § 596 cmt. e. (1977).

In *Murphy v. Harty*, 238 Or. 228, 393 P.2d 206 (1964), the court found that a communication between officials of the Baptist church, relating the charges that led to the dismissal of a pastor, was conditionally privileged. "[I]f the evidence discloses that the defendant did not act in good faith, but took advantage of the occasion to injure the plaintiff in his character or standing the communications would *cease* to be privileged." *Id.* 393 P.2d at 216 (emphasis added).[5]

In this case, the superior court is not divested of its jurisdiction simply because Munro made his remarks while acting in the course of his duty. That fact only provides Munro with a conditional privilege, which is waived if Marshall can prove that Munro acted with actual malice. *Restatement (Second) of Torts* §§ 596 cmt. e and 599–605A (1977); *see also Murphy*, 393 P.2d at 214. Determining whether Munro acted with actual malice will not require

the court to delve into ecclesiastical concerns. Rather, the issue is whether Munro had "reasonable grounds for believing the defamatory statements … and … whether they were motivated by actual malice." *Id.* at 217. This question can be resolved without considering Munro's church related duties and is within the court's jurisdiction.

## IV. CONCLUSION

The dismissal of the breach of contract claim is AFFIRMED. The dismissal of the defamation and interference with contract claims is REVERSED and REMANDED. As Munro is no longer the prevailing party, the award of attorney's fees is also REVERSED.

---

5. *See also Joiner v. Weeks,* 383 So.2d 101 (La. App.1980) (dismissing claims of wrongful disfellowship and wrongful deprivation of livelihood and concluding allegedly defamatory statements made were privileged and the evidence failed to show by clear and convincing evidence that members acted with malice); and *Pendleton v. Hawkins,* 11 A.D. 602, 42 N.Y.S. 626 (1896) (finding the claim for libel arising from a deacon showing letter from clerk to other deacons and parishioners remanded for new trial on the basis that the jury should have been instructed that the publication was qualifiedly privileged requiring a finding that the communications were made maliciously).