216 So.2d 512 (1968)
WASHINGTON COUNTY KENNEL CLUB, INC., a Florida Corporation, Appellant,
v.
Robert Dee EDGE, Appellee.
WASHINGTON COUNTY KENNEL CLUB, INC., a Florida Corporation, Appellant,
v.
Mrs. A.P. HUTTO, Appellee.
Nos. J-298, J-299.
District Court of Appeal of Florida. First District.
November 19, 1968.
Rehearings Denied January 7, 1969.
*513 Bolles, Goodwin & Ryskamp, Miami, for appellant.
*514 Gillis E. Powell and Brooks Taylor, Crestview, for appellees.
SPECTOR, Judge.
The defendant appeals from two final judgments entered pursuant to jury verdicts in two separate actions for false arrest. The jury awarded the plaintiffs damages in the amount of $50,000 each. Both actions arose out of the same incident and were consolidated for trial as well as for the instant appeal.
By virtually identical complaints, the defendant was charged with maliciously causing the respective plaintiffs, appellees herein, to be falsely arrested through the conduct of defendant's employee and agent. The complaints charge that pursuant to said false arrest the plaintiffs were taken to and detained in the defendant's offices against their will and that same occurred with the knowledge and consent of officers of the defendant corporation who were present at the time of the incident. Thereafter, continue the complaints, the plaintiffs were taken to the county jail by a deputy sheriff summoned by defendant. Allegations of pain, suffering, humiliation, and embarrassment were made, followed by claims for damages suffered as a result of the conduct of the defendant's agent.
Appellant answered both complaints by general denials and special defenses by which it alleged that plaintiffs were arrested by a Washington County deputy sheriff for a criminal offense committed in said officer's presence; that neither defendant nor its officers or agents participated, procured, directed or had anything to do with the arrest of the plaintiffs; and that its agent signed an affidavit against each of the plaintiffs the morning after their arrest by the deputy sheriff charging them with committing the criminal offense of disorderly conduct for which they were arrested by said officer. An additional separate defense was interposed by defendant by which it alleged that the plaintiffs were unlawfully taking and carrying away defendant's property when they were arrested by the deputy sheriff.
The issues having been framed by the above recited pleadings, a jury trial was had at which much conflicting testimony was introduced. The conflicts appear to have been resolved in favor of the plaintiffs as is evident from the verdict rendered. Although appellant advances a version of the incident which, if true, might detract from the plaintiffs' right to recover, a question which we need not and do not now decide, we must concern ourselves with the determination of whether the plaintiffs' version of the incident is sufficient upon which to predicate the jury's finding of liability. We so hold because the law is clear that where factual issues, conflicts of testimony and evidentiary inferences are submitted to and decided by a jury against either party, the appellate court may not substitute its judgment on such issues of fact as found by the jury unless the findings are manifestly unreasonable and clearly against the weight of the evidence. See Wrains v. Rose, 175 So.2d 75 (Fla.App.2d 1965), and cases cited therein.
Examining the evidence presented below in the light most favorable to the plaintiffs, it appears that at the time of the incident sued upon appellees were present at appellant's greyhound racing course for the purpose of making pari-mutuel wagers on the outcome of the races presented by appellant. During the evening and shortly after the seventh race, appellee Edge presented a ticket at the cashier's window being operated by one Pipkin. Pipkin checked the ticket and gave Edge $36.40 which money was in turn delivered to appellee Hutto. Shortly thereafter Pipkin came to the place where the appellees were sitting and demanded that the money be returned. Pipkin claimed that the ticket given him by Edge was not a winning ticket and that the money must be returned. Upon being told that Mrs. Hutto had the money because the ticket was hers and that they would not return the money because it *515 was a good ticket, Pipkin caused the appellant's security officer to be summoned. The security officer took Edge into custody after talking with Pipkin and the appellees. Edge was taken to an office, questioned about the ticket, and was told to return the money. He also was told to remain at the office. A Washington County deputy was summoned by the security officer. This deputy took Mrs. Hutto into custody after talking with Pipkin. After the last race, the deputy set out to take the appellees to jail. Mrs. Hutto posted a $35 cash appearance bond before getting to jail. Edge spent the remainder of the night in jail and posted a $250 appearance bond the following morning. At the time each of the plaintiffs posted bond, the receipts given them reflected that the charges against them were for swindling. The day after the arrest, Pipkin signed an affidavit charging the appellees with disorderly conduct. Some eight months later, he signed an affidavit charging them with stealing $36.40. At the time of this false arrest trial, the appellees had not been brought to trial on any criminal charges arising out of the purported swindle or theft.
The conflict in evidence is found in Pipkin's testimony that he did not threaten the appellees with arrest while the latter contend that he did so threaten. The deputy's testimony that he arrested the appellees for disorderly conduct in his presence was confirmed by the appellant's other witness, but was disputed by a disinterested witness for the appellees, as well as by the documents that show that bonds were made on the basis of the swindling charge.
Certainly there is ample evidence from which the jury could conclude, as they apparently did, that the appellees were not arrested for disorderly conduct, but were arrested on Pipkin's complaint that appellees had tricked him out of $36.40.
Against the foregoing factual background, appellant seeks reversal of both judgments on three grounds.
First, it is argued that the trial judge should have granted defendant's motion for directed verdict at the close of plaintiffs' case because the evidence shows that the arrest of plaintiffs was neither false nor unlawful. This point is obviously premised upon appellant's contention that the plaintiffs were lawfully arrested by the deputy sheriff on charges of disorderly conduct. However, whether the plaintiffs were in fact arrested for disorderly conduct committed in the presence of the deputy sheriff or were arrested by the deputy sheriff on Pipkin's charge of swindling was an evidentiary matter resolved against appellant by the jury. The alleged swindling is shown by the record not to have been committed in the presence of the deputy sheriff and that act constituting a misdemeanor, petit larceny as defined by Section 811.021, Florida Statutes, F.S.A., a warrant was a necessary prerequisite to the arrest in accordance with the provisions of Section 901.15, Florida Statutes, F.S.A, in order that the arrest be lawful. The evidence given by the plaintiffs, the bystander witness who stated the plaintiffs were not being disorderly in the presence of the deputy, and the inferences arising from the testimony that the appearance bond receipts indicated the charges to be swindling, all taken together, was more than sufficient to disprove appellant's contention that the arrest was for disorderly conduct in the presence of the arresting officer.
There seems to be no question but that the jury could have found that the deputy sheriff was summoned by and accomplished the arrest at the request and instigation of the appellant's agent. These circumstances thus seem to require us to invoke the rule set forth by the Florida Supreme Court in Johnson v. Weiner, 155 Fla. 169, 19 So.2d 699, wherein it stated:
"To be liable in an action for false imprisonment, one must have personally and actively participated therein, directly or by indirect procurement. All those who, by direct act or indirect procurement, *516 personally participate in or proximately cause the false imprisonment and unlawful detention are liable therefor."
In Weiner, supra, the court equated the tort of false arrest with false imprisonment stating that the only distinction between them was in terminology.
While the above analysis of the evidence before the jury is more than sufficient to support the jury's liability verdict for the plaintiffs, we must observe that appellant's argument wholly ignores the evidence that it was its agent, not the deputy sheriff, who took appellee Edge from the stands and into appellant's office there to detain him while they interrogated him and tried to induce him to return the money earlier paid on the ticket. This conduct of itself constituted a false arrest for it is not necessary that a person actually be incarcerated to have a cause of action for false arrest. Cline v. Flagler Sales Corp., 207 So.2d 709 (Fla.App.3d 1968).
The second point raised by appellant is that its actions come within the protective cover of Section 811.022, Florida Statutes, F.S.A, and therefore the trial judge should have instructed the jury as to its provisions. We cannot agree with appellant's contention. The cited statute in substance provides that a merchant's employee who has probable cause for believing that goods of the merchant have been unlawfully taken, can recover them by taking the person into custody for the purpose of effecting a recovery. Rothstein v. Jackson's of Coral Gables, Inc., 133 So.2d 331 (Fla.App.3d 1961). The preamble to that enactment clearly indicates that its purpose is to assist merchants in the reduction of the proliferation of shoplifting crimes. Section 672.2-104 Florida Statutes, F.S.A., of the Uniform Commercial Code defines a merchant as a person who deals in goods and Section 672.2-105 defines goods as all things other than money. It is clear to us that the operator of a pari-mutuel racing track cannot be considered a merchant within the purview of Section 811.022, Florida Statutes, F.S.A. Accordingly, no error has been demonstrated on that account.
Lastly, appellant contends that the verdicts rendered were excessive and that the trial court erred in failing to grant its motion for new trial or to order a remittitur. In support of this ground for reversal, appellant reviews evidence presented to the jury as to the damages suffered by each of the plaintiffs and submits a series of cases from foreign jurisdictions in which false arrest verdicts ranging from $1,000 to $7,500 were held to be excessive and another group of cases holding verdicts of $100 to $5,600 not to be excessive. It has been held by the courts of our state that the amounts of damage awarded in other similar cases may be considered in determining whether a verdict is excessive. Pendarvis v. Pfeffer, 132 Fla. 724, 182 So. 307. That rule is stated in 9 Fla.Jur., Damages, Section 99, thusly:
"In considering whether the amount awarded in a particular case is excessive, a comparison with other cases is said to be sometimes fraught with danger, since, of course, each case is different and must of necessity be measured in the light of the circumstances peculiar to it. Nevertheless, it is recognized that reference to amounts awarded in similar cases has at least a limited value. Accordingly, the courts have considered the amount awarded in other similar cases, in determining whether a verdict is excessive."
Appellees counter the contention that the verdicts were excessive by citing to the court the well known rule that the amount of damages to be awarded in an action for false imprisonment is a question for the jury and ought not be disturbed on the ground of excessiveness unless it is so flagrantly large as to evince passion, partiality, or corruption. We are, of course, not unacquainted with the rule cited. Nonetheless a great deal of reflection upon the amount awarded each plaintiff leaves *517 us with the conclusion that the judgments under review are excessive in the circumstances revealed by the record before us. Our search of Florida cases reveals that in an action for false arrest, the Second District Court of Appeal in Wrains v. Rose, supra, affirmed a judgment in the amount of $5,000 against the contention that it was excessive. In Webb's City, Inc. v. Hancur, 144 So.2d 319 (Fla.App.2d 1962), the same court upheld an award of $7,000 for compensatory and punitive damages against a challenge for excessiveness in an action for false arrest. In Lovinger v. Pfeffer, 107 Ga. App. 636, 131 S.E.2d 137 (1963), the court affirmed a $9,000 verdict in a malicious prosecution case as being not excessive. In Wehrman v. Liberty Petroleum Co., 382 S.W.2d 56 (Mo. App. 1964), the court upheld an award of $7,500 punitive damages as against a claim of excessiveness in a false arrest case.
From reviewing the above random verdicts, it can be seen that the ones under review are inordinately out of line. Nor are there factual circumstances in this record tending to justify such sweeping departures from the figures approved in the above cases. There is no evidence that the plaintiffs were physically beaten or otherwise terrorized. Mrs. Hutto was permitted to make bond and thus avoided incarceration in jail, while the plaintiff Edge did not fare so well in that he did have to spend a night in jail. It seems to us that, at least in a tangible sense, Edge's damages exceeded those of Mrs. Hutto.
Having concluded that both judgments under review bear no reasonable relationship to the damages suffered by appellees as revealed by the evidence and that the said judgments are of such magnitude that they shock the conscience of the court, we are required to reverse the judgments in both cases herein on grounds of excessiveness unless the appellee, Mrs. Hutto, files her remittitur in the court below for all amounts of her judgment in excess of $5,000 and appellee Edge files his remittitur in the court below for all amounts of his judgment in excess of $7,500. Should the appellees herein fail or refuse to file such remittiturs, the judgments in both of these consolidated cases shall stand reversed and both cases remanded for a new trial on the question of damages only.
WIGGINTON, C.J., and CARROLL, DONALD K., J., concur.

ON PETITION FOR REHEARING
SPECTOR, Judge.
By its petition for rehearing, appellant has called to our attention the inadvertent omission of the time within which the remittiturs provided for in the court's opinion and judgments filed herein on November 19, 1968, must be filed in the lower court. Accordingly, the said judgments are hereby amended by providing that the respective remittiturs are required to be filed in the court below within fifteen days of the going down of the mandate herein, in default of which the judgments appealed shall stand reversed and new trials shall be had in both cases on the question of damages only. Should either of the appellees choose to seek review of our judgment by petition for certiorari in the Supreme Court of Florida within the time provided in this order for filing remittiturs, then the time for filing such remittiturs shall be extended until fifteen days after the Supreme Court's disposition of said certiorari proceedings.
We have considered the other matters raised by appellant's petition and find them to be less than persuasive.
We adhere to our initial opinion in all respects except for the setting of the time within which to file remittiturs as above set forth.
Appellant's petition for rehearing is denied.
WIGGINTON, C.J., and CARROLL, DONALD K., J., concur.