Argued November 8, affirmed March 28, 1974

GLENN, *Respondent, v.* ESCO CORPORATION
ET AL, *Appellants.*

520 P2d 443

L. M. *Schouboe,* Portland, argued the cause for appellants. With him on the briefs were Larry Dawson and Schouboe, Cavanaugh & Dawson, Portland.

*Gerald R. Pullen,* Portland, argued the cause and filed a brief for respondent.

DENECKE, J.

The plaintiff secured a verdict and judgment for $3,000 general damages and $3,000 punitive damages in this libel action. The defendants appeal.

The defendants assigned as error the trial court's refusal to grant their motion for directed verdict and its refusal to remove punitive damages from the jury's consideration.

The plaintiff worked for the defendant Esco. The defendant Kimberley was the personnel manager for Esco. A Dr. Shlim treated some of Esco's employees for industrial injuries. For this reason Mr. Kimberley had a remote acquaintance with Dr. Shlim. Dr. Shlim or his wife called Mr. Kimberley and said plaintiff owed him $13.75 for past-due rent and asked Mr. Kimberley's assistance in collecting the debt. Mr. Kimberley agreed to help. He sent the following letter to plaintiff with copies to plaintiff's foreman and leadman and one for plaintiff's personnel file:

"I am in receipt of a letter from Dr. Nathan Shlim, in which he states that you have an obligation to him in the amount of $13.75 past due rent.

Bryson, J., did not participate in this decision.

He indicates that unless this debt is paid, he will garnish your wages. As you must realize garnishments made against an employee's wages constitute a considerable amount of trouble for ESCO COR-PORATION. If this matter is not taken care of immediately, the appropriate disciplinary action will be initiated.

"If you have any further questions regarding this matter, please don't hesitate to contact me."

The letter was incorrect in stating that defendant was in receipt of a letter. The letter from Dr. Shlim came after Mr. Kimberley wrote plaintiff. The jury could also find that plaintiff did not owe Dr. Shlim money and that Dr. Shlim did not indicate to Mr. Kimberley that he would garnish plaintiff's wages.

■ The defendants' contention is:

"* * * The jury's proper function in this case was to determine whether the recipients of the memorandum understood it to be defamatory * * *. Without testimony from a recipient of the memorandum there was no basis for the jury's function and the resulting verdict was necessarily based on speculation."

Very recently we decided contrary to defendants' contention. *Beecher v. Montgomery Ward & Co., Inc.*, 267 Or 496, 500, 517 P2d 667 (1973):

"Defendant argues that there is no proof of defamation because no one testified that he understood that plaintiff's credit was the subject of distrust. The jury does not have to have specific testimony to this effect because it may draw such a conclusion from all the circumstances surrounding the communciation and the relations of the parties. The jury could have drawn the conclusion that plaintiff's employer understood the defendant to be saying that plaintiff was 'poor pay' and would not honor his just debts without pressure from his em-

ployer. The employer did not have to testify to this understanding in order for the jury to determine its existence."

The trial court correctly denied the motion for a directed verdict.

The trial court refused to take the issue of punitive damages from the jury in the belief that our decision in *Hinkle v. Alexander*, 244 Or 267, 411 P2d 829, 417 P2d 586 (1966), required such a ruling. In *Hinkle*, with facts very roughly comparable to those in the present case, we reinstated a verdict for both general and punitive damages. However, as we stated in the first opinion in *Hinkle*, the only issue was whether the words were actionable per se; that is, could the plaintiff maintain the action. There was no issue concerning the punitive damages or any damages. For this reason the decision in *Hinkle* leaves the question of punitive damages unresolved.

■ In *Noe v. Kaiser Foundation Hosp.*, 248 Or 420, 425, 435 P2d 306 (1967), we stated the general criteria for determining when punitive damages can be awarded. We held:

"Punitive damages can only be justified on the theory of determent. See Hodel, The Doctrine of Exemplary Damages in Oregon, 44 Or L Rev 175 (1965). It is only in those instances where the violation of societal interests is sufficiently great and of a kind that sanctions would tend to prevent, that the use of punitive damages is proper. Regardless of the nomenclature by which a violation of these obligations is described (grossly negligent, willful, wanton, malicious, etc.), it is apparent that this court has decided that it is proper to use the sanction of punitive damages where there has been a particularly aggravated disregard * * * [of the rights of the victim]."

Repeated in *Douglas v. Humble Oil*, 251 Or 310, 315, 445 P2d 590 (1968).

■ Unfortunately, because of the myriad of fact combinations possible, this determination of when punitive damages are awardable must proceed for a time, in some fact areas, on a case-to-case basis.

■ We are of the opinion that the conduct the jury could have found the defendant engaged in violated "societal interests" of importance. We are further of the opinion that the assessment of punitive damages might deter such conduct. For these reasons we hold the issue of punitive damages was properly submitted to the jury.

A workman's job is obviously of utmost importance to the workman. Retention and possible promotion are two of the most substantial aspects of that job. Communications adversely reflecting on the workman's character to the workman's immediate supervisor and to that sometimes mysterious receptacle called a workman's "personnel file" can be seriously detrimental to the workman. Corrections of incorrect information do not always erase the effect of the communication of incorrect information. The practice of disseminating to persons concerned with a workman's job false information that the workman is unworthy of credit could be found by a jury to be "a particularly aggravated disregard" for the rights of a workman.

Affirmed.