Albert G. ACKERLEY and Cheryl Ackerley, Plaintiffs,

v.

CREDIT BUREAU OF SHERIDAN, INC., Defendant.

No. C74-23.

United States District Court, D. Wyoming.

Dec. 6, 1974.

Harlan W. Rasmussen, Wolfe & Rasmussen, Sheridan, Wyo., for plaintiffs.

David F. Palmerlee, Redle, Yonkee & Arney, Sheridan, Wyo., for defendant.

*Judge's Memorandum Opinion*

KERR, District Judge.

Defendant has filed a motion for summary judgment in this action, which is one of initial impression in this court. Plaintiffs have brought this action pursuant to the Fair Credit Reporting Act, 15 U.S.C.A. § 1681 et seq., which allows an action to be brought to enforce any provisions thereof, regardless of the amount in controversy. 15 U.S.C.A. § 1681p.

In a somewhat inartful manner, plaintiffs originally having filed a complaint without any allegations upon which jurisdiction might rest, see Fed.R. Civ.P. 8(a)(1), this action is brought alleging violations of the Fair Credit Reporting Act. Plaintiffs allege that in December 1973, they were refused credit by several commercial enterprises, allegedly on the basis of a credit report prepared and furnished by defendant. Plaintiffs claim that they then went to the offices of the defendant and sought disclosure of material on file regarding their credit standing. It is alleged that defendant refused to allow plaintiffs to examine any material on file and refused to disclose the contents of the file. Plaintiffs allege that these refusals were willful and unlawful for which they seek actual damages in the amount of $200.00 (Amended Complaint ¶ VII). In the next paragraph, plaintiffs complain that the acts were "willfull (sic), unlawful, and negligently done by the defendant, wherefore, Plaintiffs pray for punitive damages and exemplary damages in the sum of $30,000.00" (Amended Complaint ¶ VIII). Defendant has denied all allegations in the complaint.

The Fair Credit Reporting Act, 15 U.S.C.A. § 1681 et seq. (FCRA), enacted in 1970, represents the first significant effort to curb some of the abuses of the credit reporting industry. It has been estimated that credit files are maintained on more than 120 million American consumers. See Hearings on S. 2360 Before the Subcomm. on Consumer Credit, 93d Cong. 1st Sess. 20. This Act is an effort to provide some protection from erroneous or unauthorized distribution of this mass of information. The margin for error is not small, it being believed that as many as one out of every twenty reports may contain material errors. See "Actions For Negligent Noncompliance Under the Federal Fair Credit Reporting Act," 47 S.Cal.L.Rev. 1070, 1090 (1974). The Act has codified certain aspects of the common law doctrines of defamation and imposed certain new requirements. The general purpose of the FCRA is to protect the reputation of a consumer, for once false rumors are circulated there is not complete vindication. See O. Holmes, The Common Law III (M. Howe ed. 1963).

The FCRA places restrictions on the purposes for which a consumer report may be prepared. 15 U.S.C.A. § 1681b. The general allegations of the parties

make it appear that the reports which caused the controversy were prepared for a permissible purpose. The FCRA limits the subject matter of a credit report, 15 U.S.C.A. § 1681c; and it changes the common law in this respect by prohibiting the inclusion of certain "obsolete" information. It is not clear whether the report here deleted, as required, any such information; i. e., bankruptcies, which from the last adjudication of bankruptcy, antedate the report by more than 14 years; judgments which antedate the report by more than seven years. A weakness in the FCRA is that it is unclear whether production of a consumer file can be obtained without bringing suit for damages. As pertains to this action, it is unclear whether the report involved was an investigative consumer report, with its attendant requirements, 15 U.S.C.A. § 1681d, or merely a consumer report. Under 15 U.S.C.A. § 1681e, the FCRA, as it does throughout, requires that consumer reporting agencies "maintain reasonable procedures" to ensure that inaccurate or obsolete information is deleted and that a report is prepared only for permissible purposes under § 1681b. The FCRA, at 15 U.S.C.A. § 1681g, requires, upon proper identification, accurate disclosure to the consumer:

"(1) The nature and substance of all information . . . in its files on the consumer at the time of the request.

(2) The sources of information; except that the sources of information acquired solely for use in preparing an investigative consumer report and actually used for no other purpose need not be disclosed. . . .

(3) The recipients of any consumer report on the consumer which it has furnished—

. . . . . .

(B) for any other purpose within the six-month period preceding the request."

Section 1681h of the FCRA requires that the consumer reporting agency make any disclosures required by § 1681g, above, during normal business hours to the consumer if he appears in person and furnishes proper identification. Section 1681h(c) requires the agency to "[P]rovide trained personnel to explain to the consumer any information furnished to him . . ." Any information thus disclosed under the disclosure provisions of the FCRA cannot be used as a basis for an action unless such false information is furnished with malice or willful intent to injure such consumer. This limitation of liability is subject to the exceptions of § 1681n and § 1681o.

Section 1681n provides:

"Any consumer reporting agency or user of information which willfully fails to comply with any requirement imposed . . . with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1) any actual damages sustained by the consumer as a result of the failure;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action . . ., the costs of the action together with reasonable attorneys' fees . . .."

Section 1681o imposes liability for negligent noncompliance, and for any negligent failure to comply with any requirements of the Act provides a potential liability of:

"(1) any actual damages sustained by the consumer as a result of the failure;

(2) in the case of any successful action . . . the costs of the action together with reasonable attorneys' fees".

Defendant contends, in its motion for summary judgment, that this action for negligent failure to disclose cannot be maintained absent any actual damages;

in the alternative, it is contended that a claim for willful noncompliance cannot be maintained absent any showing of actual damages.. The situation is clouded by plaintiffs' allegations of willfulness and negligence within the same claim, above. The motion for summary judgment was not supported by any affidavits. Plaintiffs have filed an affidavit in resistance, wherein they allege lost wages.

The remedies provided by the Act are of a federal statutory nature, and thus defendant's contention that any right to relief in the form of damages is to be determined by state court decisions is ill-taken. Cf. Swift v. Tyson, 41 U.S. 1, 10 L.Ed. 865 (1842). It has been held that the general federal rule is to allow punitive damages, if there is a basis in fact, without regard to the necessity of actual damages, see Wardman-Justice Motors, Inc. v. Petrie, 59 App. D.C. 262, 39 F.2d 512, 516 (1930), wherein it was said, "Punitive damages being given by way of punishment, there is no reason to hold that there must be actual damage, or something more than nominal damage, to justify their imposition. Punitive damages depend not upon the amount of actual damage, but upon the intent with which the wrong was done." There is, of course, no slight criticism of this view, many states holding that actual damages must be found as a predicate to exemplary damages. See Annotation, 17 A.L.R.2d 527. But this is a misapprehension of the purpose of punitive damages if actual damage is required. Punitive damages are recoverable not to compensate the plaintiff, but solely to punish the defendant. Such a view has been set forth on many occasions in instructions to various juries by this Court.

The plain language of § 1681n, if this is viewed as an action pursuant to this section, further buttresses the view that actual damage is not required in an action to enforce any liability under the Act. This section does not speak in terms of requiring actual damages; rather, it refers to actual damages as only one portion of any award or relief that might be granted. Further, proposed amendments to the Act, which would inter alia provide for a minimum award of general damages, in an action for negligent noncompliance under § 1681o, support this view that the various forms of relief are to be regarded in the disjunctive. See S. 2360, 93d Cong. 1st Sess. (1973). This does not mean that a credit reporting agency would be held strictly liable for any violation, nor does this mean that a violation will render an agency liable to the unpredictable results of a punitive damages award; for the burden remains upon the plaintiff to prove willfulness, and the statute provides the "reasonable procedures" defense. It would be difficult in many cases to prove actual damage as a result of any violation of the act and the tortious nature of the Act does not require that actual damages be proven, but only that they not be speculative.

There appearing genuine issues as to material facts, the motion for summary judgment will be overruled.